**IT IS ORDERED as set forth below:**



**Date: August 16, 2022**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NUMBERS: |
| **TAMIKA CHAQUEETA GARCIA,** | : | **21-53966-LRC** |
| Debtor. | : | CHAPTER 7 |
| **MARK W. DOBRONSKI,** | : | |
| Plaintiff, | : | ADVERSARY PROCEEDING NO: |
| v. | : | **21-05087-LRC** |
| **TAMIKA CHAQUETTA GARCIA**, | : | |
| Defendant. | : | |

## ORDER

Before the Court is Defendant's *Response and Defenses to Amended Complaint, Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, and*

*Motion to Dismiss for Lack of Standing* (Doc. 28) (the "Motion"). In part, the Motion seeks dismissal for failure to state a claim and for lack of standing of an amended complaint to determine the dischargeability of a particular debt (Doc. 19) (the "Amended Complaint"). Plaintiff opposes dismissal. *See* Plaintiff's *Response in Opposition to Defendant's Motion to Dismiss Complaint* (Doc. 33). These matters constitute core proceedings, over which this Court has subject matter jurisdiction. 28 U.S.C. §§ 1334; 157(b)(2)I).

## BACKGROUND

Defendant filed a previous bankruptcy petition on February 5, 2021, (Case No. 21-51038) (the "Previous Case"), which was dismissed on April 19, 2021, for failure to appear at her § 341 hearing. Shortly thereafter, Defendant filed the instant Chapter 7 petition on May 24, 2021 (Case No. 21-53966) (the "Instant Case"). The deadline to file a complaint to determine dischargeability was set for August 23, 2021, and Plaintiff timely filed his original complaint (Doc. 1) (the "Original Complaint") on that date.[1] In his Amended

---

[1] In its order entered March 4, 2022 (the "Order"), the Court reserved ruling on Defendant's motion to dismiss this matter for lack of personal jurisdiction because of what she claims to be insufficient service of process. Doc. 17. Additionally in the Order, the Court granted Plaintiff until March 25, 2022, to file an amended complaint. *Id*. He did so on March 24, 2022. The Clerk issued an alias summons on March 29, 2022, and Plaintiff appears to have perfected service on the same day as issuance, sending the Amended Complaint and the alias summons via first class and certified mail to Defendant and Defendant's counsel. Doc. 24. FED. RULE CIVIL PRO. 4(m), made applicable here pursuant to FED. RULE BANKR. PRO. 7004(a) provides in part, "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Even in the absence of a showing of good cause, courts have discretion to extend time for service of process, including in instances where dismissal would result in the time-barring of a claim. *Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1131 (11th Cir. 2005).

As to his Original Complaint, Plaintiff claims he perfected service on August 29, 2021, which would satisfy the requirements of RULE 4(m). Doc. 5. Defendant denies proper service of process. Thus, assuming Defendant prevailed in an evidentiary hearing on the issue, the Court would need to determine whether to dismiss this matter or to enlarge the time within which Plaintiff can perfect service. To avoid the need for such evidentiary hearing, now that the Amended Complaint has been filed and appears properly served with the alias summons, the Court believes that extending the time to include March 29, 2022, is in the best interest of judicial efficiency.

2

Complaint, Plaintiff alleges that Defendant owes him a nondischargeable debt for Defendant's role in an alleged "fraudulent scheme to collect phantom or phoney [sic] debt from unsuspecting consumers" that violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq*., (the "TCPA") and the Fair Debt Collection Practices Act, 16 U.S.C. § 1692, *et seq*., (the "FDCPA"). Amended Complaint at ¶¶ 7 and 11.

## REVELANT FACTS

Plaintiff contends that "on May 12, 2020, May 20, 2020, and June 3, 2020, Defendant or Defendant's agents initiated phone calls to telephone number 734-641-2300, an emergency telephone line of a law enforcement agency[2] and which is assigned to a paging service of other radio common carrier service." Amended Complaint at ¶ 21. Defendant or Defendant's agents allegedly used a "robocalling" platform to deliver a prerecorded message to recipients, which stated, in part that the recipient had charges pending against him and that the recipient could "resolve [his] case voluntarily" by calling a provided telephone number and referencing a certain case number. *Id*. at ¶ 21. Plaintiff received all three calls in question and when Plaintiff called the provided number, the agent he spoke to claimed "that Plaintiff was required to make an immediate good faith payment via credit card to avoid being arrested." *Id*. at ¶ 27. In response, Plaintiff "challenged the agent regarding the alleged debt" before the agent "informed Plaintiff that a warrant was going to be issued and then hung up." *Id*. at ¶ 28.

---

[2] In a complaint he filed with the State of Michigan Plaintiff notes that the number referenced is used for emergency purposes because his company, Adrian & Blissfield Railroad Company ("ADBF"), employs state-commissioned railroad police who have the "national law enforcement authority pursuant to 49 U.S.C. § 28101." Amended Complaint, Ex. A at ¶ 22-25.

3

While the parties agree that the calls were made to Plaintiff's place of business, Plaintiff says, as "actual recipient" of the calls, he personally suffered "stress, anxiety, fear, nervousness, embarrassment, distress, and aggravation." *Id*. at ¶ 23 and 26. In his Amended Complaint, he does not appear to plead injuries on behalf of his business. Claiming that these calls were violations of the TCPA and FDCPA, Plaintiff now seeks a determination of nondischargability for this unliquidated alleged debt pursuant to 11 U.S.C §§ 523(a)(2), (a)(3), (a)(4), and (a)(6).

## DISCUSSION

*Standard*

When considering whether to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, the Court must accept as true all factual allegations set forth in the complaint and, on the basis of those facts, determine whether the plaintiff is entitled to the relief requested. Further, the Court must draw all reasonable inferences in the light most favorable to the non-moving party. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007); *Daewoo Motor America Inc. v. General Motors Corp.*, 459 F.3d 1249, 1271 (11th Cir. 2007); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Grossman v. Nationsbank, Nat'l Ass's*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273, n.1 (11th Cir. 1999).

*Standing*

Through the Motion, Defendant contends that the Amended Complaint fails to establish that Plaintiff has standing to bring his claims against Defendant. "A plaintiff

4

seeking to invoke a federal court's jurisdiction bears the burden of establishing standing." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004). "If a plaintiff lacks standing, the 'case' or 'controversy' requirement of Article III, § 2 of the U.S. Constitution is not satisfied, and the case must be dismissed." *Id*. There are three constitutional elements of standing: "(1) [the plaintiff] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Serves. (TOC), Inc*., 528 U.S. 167, 180-81 (2000)). "All three [of these] elements are an 'irreducible constitutional minimum,' and failure to show any one results in a failure to show standing." *Id*. at 1305 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Defendant contends that Plaintiff attempts to bring claims on behalf of ADBF. However, Plaintiff contends that he answered the phone calls in question and claims injuries personal in nature, ones that are traceable to Defendant's alleged acts. *See* Amended Complaint at ¶ 26. Since Plaintiff brings this action for the purpose of recovering in his personal capacity, not on behalf of ADBF, Plaintiff has standing to do so.

*Count I - § 523(a)(2)*

In relevant part, Section 523(a)(2)(A) provides that "[a] discharge under section 727 … of this title does not discharge an individual debtor from any debt for money, property, services … to the extent obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). As to the former, "[i]n order to except a debt from discharge

5

under the false pretenses or false representation prongs of § 523(a)(2)(A), the creditor must establish the following elements: (1) the debtor made a false representation of fact; (2) which the debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) the creditor justifiably relied on the false representation." *In re Hanson*, 432 B.R. 758, 771 (Bankr. N.D. Ill. 2010) (citing *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010)). If a creditor alleges actual fraud, "a different analysis . . . must be utilized" and "the creditor must establish [that]: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute." *Id*. at 772 (citing *McClellan v. Cantrell*, 217 F.3d 890, 964 (7th Cir. 2000)). Notably, "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).

The scheme Plaintiff alleges – that of a kind with intent to "extort money from Plaintiff" – is, however, premised on misrepresentation. Amended Complaint at ¶ 57. Specifically, Plaintiff argues that "[Defendant] engaged in a scheme to defraud by the use of false pretenses and false representations made to Plaintiff by representing to Plaintiff that [he] owed a debt" that he in fact did not. *Id*. at ¶ 50. Therefore, in applying the analysis outlined in *Hanson*, Plaintiff's claim falls short under §523(a)(2)(A) because Plaintiff pleads no facts to suggest that he relied (justifiably or not) on any false representation. Indeed, just the opposite; Plaintiff notes that, when he called the number provided in the recording, he "challenged the agent regarding the alleged debt and being subject to being

6

arrested." *Id*. at ¶ 28. Therefore, the Court dismisses with prejudice Count I of the Amended Complaint for failure to state a claim.

*Count II – § 523(a)(3)*

The Court summarily dismisses Count II of Plaintiff's Amended Complaint for its failure to state a claim. Section 523(a)(3)(B) provides:

> "[a] discharge under section 727 … of this title does not discharge an individual debtor from any debt neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit, if such a debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability … unless such creditor had notice or actual knowledge of the case in time for such timely filing and request."

Plaintiff contends that he was unaware of the filing of the Previous Case due to Defendant's failure to schedule him as a creditor and that he likewise had no knowledge of the Instant Case due to his failure to "receive any notice… such that [he] could participate." Amended Complaint at ¶¶ 14 and 17. Plaintiff had actual knowledge of the Instant Case, as evidenced by his timely filing of the Original Complaint. For this reason, the Court dismisses with prejudice Count II of the Amended Complaint.

*Count III – 523(a)(4)*

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). This

7

exception requires a showing that a "debtor, acting as a fiduciary in accordance with an express or technical trust that existed prior to the wrongful act, commit[ted] an act of fraud or defalcation." *In re Cawthorn*, 594 B.R. 913, 921 (Bankr. N.D. Ga 2018). Plaintiff pleads neither facts that indicate Defendant was acting in any kind of fiduciary role nor any fact that a trust existed between the parties in this matter. Instead, Plaintiff only pleads facts to suggest there was no relationship whatsoever between him (or even ADBF) and Defendant prior to the calls in question. Therefore, the Court dismisses with prejudice Count III.

*Count IV – 523(a)(6)*

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "'A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury.'" *In re Kane*, 755 F.3d 1285, 1293 (11th Cir. 2014) (quoting *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012)); *see also In re Walker*, 48 F.3d 1161, 1165 (11th Cir. 1995); *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (holding that Section 523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury). "To establish malice, Plaintiff[] must show that Defendant's actions were 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Watson*, 2019 WL 5388061, at *3 (Bankr. N.D. Ga. Oct. 18, 2019) (Ellis-Monro, J.) (quoting *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012)).

Plaintiff has pled sufficient facts, if proven at trial, to establish a claim for damages under the TCPA and to state a claim under § 523(a)(6).[3] The pertinent subsection of the TCPA provides in part:

> "[i]t shall be unlawful for any person within the United States … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any emergency telephone line (including any "911" line and any emergency line of a … law enforcement agency."
>
> 47 U.S.C. § 227(b)(1)(A)(i).[4]

Plaintiff contends that on three occasions, Debtor used a "robocaller" to call, without consent, an emergency line in order to extort money from the calls' recipient.[5] Amended Complaint at ¶ 21. As to the "willful and malicious injury" of Section 523(a)(6), Plaintiff states that, as the recipient of the calls, he has experienced "stress, anxiety, fear,

---

[3] As to his contention that Debtor violated the FDCPA, Plaintiff pleads insufficient facts to state a claim under § 523(a)(6). "A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt,' as that term is defined by [15 U.S.C.] § 1692(a)(5)." *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1167 (3rd Cir. 1987). In part, 15 U.S.C. § 1692(a)(5) defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." Notably, "[i]t is the Plaintiff's burden to establish that the obligation at issue was a consumer debt, which is one incurred primarily for personal, family, or household purposes." *Dobronski v. Keroles Enters. LLC*, 2021 U.S. Dist. LEXIS 166767 at *15 (E.D. Mich. 2021) (internal citations omitted). Debtor pleads no facts that show he incurred a consumer debt as defined by the FDCPA.

[4] "The TCPA creates a private right of action under which a party can bring suit to recover its 'actual monetary loss' or 'to receive $500 in damages' per violation, whichever is greater." *In re Smith*, 592 B.R. 390, 396 (Bankr. N.D. Ga. 2018) (citing 47 U.S.C. § 227(b)(3)(B)).

[5] In ruling on a motion to dismiss, the Court may consider exhibits attached to the complaint. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Therefore, although the Court recognizes the legal conclusions Plaintiff states in the Amended Complaint itself, the Court also notes that facts in the Plaintiff's attached exhibit lay out how his business's phone line might qualify as an "emergency one" for purposes of proving a TCPA violation. *See* Amended Complaint, Ex. A at ¶¶ 22-25.

nervousness, embarrassment, distress, and aggravation" resulting from alleged purposeful and intentional attempts "to extort" payment from Plaintiff  *Id*. at ¶ 26 and 60.  Taking Plaintiffs facts as true, the Court could find that Debtor willfully and maliciously injured Plaintiff within the meaning of Section 523(a)(6).

## CONCLUSION

Thus, for the reasons stated herein,

**IT IS HEREBY ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART**.  The only count remaining in this matter is Count IV, in which Plaintiff seeks nondischargability of a debt arising from Debtor's purported willful and malicious acts.

## END OF DOCUMENT

**Distribution List**

**Mark W. Dobronski**
P.O. Box 85547
Westland, MI 48185

**Tamika Chaqueeta Garcia**
2729 Kristen Court
Conyers, GA 30012

**Alaina Joseph**
Joseph & Baker LLC
2463 Crestview Ave.
Decatur, GA 30032